## State of Vermont v. Anton Mastaler and the Vermont District Court, Unit No. 6, Windham Circuit

[285 A.2d 776]

No. 108-71

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 7, 1971

46

*M. Jerome Diamond,* State's Attorney for Petitioner.

*Robert Grussing III,* Brattleboro, and *Robert H. Gibson,* Brattleboro, of Counsel, for Defendant.

**Keyser, J.** This is a petition for a writ of extraordinary relief (*certiorari*) brought by the state's attorney for the County of Windham. Its purpose is to review the proceedings in the District Court, Unit No. 6, Windham Circuit, brought against the petitionee on the question of the suspension of his operator's license under what is known as the "implied consent law", 23 V.S.A. §§ 1201–1210. The suspension action followed petitionee's arrest on a charge of operating a motor vehicle while under the influence of intoxicating liquor. After hearing, the court entered a judgment adverse to the state, ruling "that there was no failure or refusal by this respondent to submit to a chemical test within the meaning of 23 V.S.A. § 1205."

The central issue presented is whether a police officer has the authority to choose the chemical test to be taken by an operator of a motor vehicle reasonably believed to be under the influence of intoxicating liquor or whether such operator has the right himself to choose, within reasonable limits, the chemical test he is willing to take to the exclusion of any other test named in the statute and thereby not be subject to a suspension of his operator's license.

It has long been the law that a person shall not operate or attempt to operate a motor vehicle while under the influence of intoxicating liquor. In 1959 the legislature enacted the so-called implied consent law. One obvious purpose of the implied consent law is to deal with the problem of persons who drive their vehicles while under the influence of liquor or drugs. The use of the public highways by motor vehicles,

with its consequent dangers, renders the necessity of regulation apparent. Courts may take judicial notice of the problem, both local and national, of the drunken driver on the highways with its ever increasing toll of injuries and deaths. See *Lee* v. *State,* 187 Kan. 566, 358 P.2d 765, 769 (1961). It is through its inherent police regulatory powers that the legislature enacted the implied consent law in 1959 and the revision of 1969. One reason for the adoption of those statutes was to promote public safety and welfare and to lessen, so far as possible, the danger to the public from intoxicated persons driving on the highways.

 The statute, 23 V.S.A. § 1188, provided that the person operating or attempting to operate a motor vehicle upon a public highway in this state was deemed to have given his consent to submit to a chemical test of his blood or such other test provided by statute. A principal purpose of the statute, also, is to encourage the availability of scientific evidence to determine the presence or absence of alcoholic influence in a person's body fluids whenever he is arrested or taken into custody for any offense involving his operation of a motor vehicle under the influence of intoxicating liquor by an officer who had reasonable grounds for making such arrest. *McGarry* v. *Costello,* 128 Vt. 234, 240, 260 A.2d 402 (1969). See also *Lee* v. *State, supra,* 358 P.2d at 769. Only a physician was authorized by 23 V.S.A. § 1190 to withdraw the blood of a person submitting to such test. Under 23 V.S.A. § 1194 the accused person instead of having blood withdrawn for a chemical test, *had the option* of submitting to a urine test or a breath test to be taken by the physician or an enforcement officer of the department of public safety.

Under 23 V.S.A. § 1191 if the person arrested refused, on request, to submit to the test, it could not be given. In this circumstance if he was charged with a violation of the motor vehicle laws and entered a plea of not guilty, the court then held a summary hearing taking evidence relating (1) to the reasonableness of the officer's belief that the respondent was operating the motor vehicle while under the influence of intoxicating liquor (or drugs) and (2) to the reasonableness of the respondent's refusal to submit to a test. See *McGarry* v.

*Costello, supra,* 128 Vt. at 238–39. A finding by the court that the officer's belief was reasonable and the refusal of the respondent was unreasonable resulted in the suspension of the respondent's license, or right to operate a motor vehicle, for a period of six months.

Effective July 1, 1970, the legislature repealed the 1959 implied consent statutes, 23 V.S.A. §§ 1183–1195, by No. 267, 1969 (Adj. Sess.), and enacted a revised and reworked version of the consent law, now embodied in 23 V.S.A. §§ 1201–1210.

The new act differs in several respects from the former statutes. A better understanding of the pertinent facts will appear by pointing out those differences with which we are directly concerned in this case.

The consent statute now reads as follows:

"§ 1202. Consent to chemical test

Any person who operates, attempts to operate or is in actual physical control of any vehicle in this state is deemed to have given his consent to the taking of a sample of his blood, breath, urine or saliva. If a person is incapable of decision, unconscious or dead it is deemed that his consent is given and that a sample of his blood, breath, urine or saliva may be taken. A sample shall be taken whenever a state police officer, chief of police, or a police officer employed full time by a town, city or incorporated village or sheriff has reasonable grounds to believe that the person was operating, attempting to operate or was in actual physical control of any vehicle while under the influence of intoxicating liquor or drugs."

It is to be noted that by this statute the person is deemed to have given his consent "to the taking of a sample of his blood, breath, urine or saliva" for the purpose of testing it for alcoholic or drug content. The saliva test was added for the first time in the rewritten statute as one of the acceptable methods of chemical analysis. The statute presently provides that "a sample shall be taken" by certain named enforcement officers whenever they have reasonable grounds to believe that the person was under the influence while operating, or attempting to operate, any vehicle. The statute also expanded

the class of persons who may give the chemical tests, other than blood tests, to include chiefs of police, full time police officers and sheriffs. The class of persons authorized to withdraw blood from the person submitting to a blood test was increased by 23 V.S.A. § 1203 to include not only a physician but also a registered nurse or a medical technician. But, as stated in 23 V.S.A. § 1202, this limitation does not apply to the taking of breath, urine or saliva specimens.

The effect of a failure to submit to a test when requested by the officer appears in 23 V.S.A. § 1205 reading as follows:

"§ 1205. Failure to submit to test

If the person refuses to submit to a chemical test, it shall not be given. If the person is charged with a violation of the vehicle laws and upon arraignment enters a plea of not guilty, the court at the arraignment or as soon thereafter as is practicable shall hold a summary hearing, and take evidence relating to the reasonableness of the officer's belief that the respondent was operating, attempting to operate or in actual physical control of a vehicle while under the influence of intoxicating liquor or drugs. Upon a finding by the court that the officer had sufficient reason to believe that the respondent was so operating, attempting to operate, or in actual physical control of a motor vehicle, the respondent's operator's license or nonresident operating privilege or the privilege of an unlicensed operator to operate a motor vehicle shall be suspended for a period of six months and the respondent shall deliver his operator's license, if any, to the court and the court shall forward it forthwith to the commissioner of motor vehicles."

The repealed statute, 23 V.S.A. § 1191, comparable to 23 V.S.A. § 1205, applied to a person who refused "to submit to the test," meaning, a blood test. But "At the option of the person, instead of the chemical test of his blood, above referred to," he could submit to a urine or breath test. 23 V.S.A. § 1194. In other words, under the prior law the right of choice rested with the respondent as to which of the three tests he would consent to take.

A significant change made by 23 V.S.A. § 1205 is that it specifically refers to a person who "refuses to submit to a chemical test."

█ The right of option which the accused formerly possessed does not appear in the revision of the implied consent law. This right of choice was repealed by the revision of the law. It may be assumed that the legislature did so with full knowledge of the language in repealed 23 V.S.A. § 1194. See *Donoghue* v. *Smith,* 119 Vt. 259, 264, 126 A.2d 93 (1956). At the same time, the right of the officer to designate which of the four tests indicated by the statute shall be taken is also lacking. It is for this reason that confusion has arisen concerning the meaning of the statutes in question. The language of the statutes leaves unanswered specifically the question of whether an accused has the right to choose one type of test to the exclusion of any of the other three.

██ The petitionee argues that in this situation the statutes should be strictly construed as in a criminal case, citing *State* v. *Baldwin,* 109 Vt. 143, 194 A. 372 (1937). We do not agree. Unlike the *Baldwin* case the implied consent law is not a criminal proceeding. *State* v. *Dellveneri,* 128 Vt. 85, 258 A.2d 834, 835 (1969). And the requirement that the so-called *Miranda* warning be given does not apply to the taking of chemical tests. *State* v. *Bassett,* 128 Vt. 453, 266 A.2d 438 (1970).

█ The summary hearing is in the nature of an administrative proceeding and is the determination of a civil matter, involving only the question of whether the respondent should, or should not, be continued in his privilege as a licensed driver for a period of six months. *State* v. *Dellveneri, supra,* 128 Vt. at 88.

In the *Baldwin* case the statute before the court for interpretation was "penal in nature" which is not the situation in the case before us. Thus the rule laid down in *Baldwin* is not in point here.

██ The fundamental rule relating to the interpretation of statutes is to ascertain and give effect to the intentions

of the legislature. *Brochu* v. *Brown,* 128 Vt. 549, 268 A.2d 745 (1970). And the real meaning and purpose of the legislature should be determined and carried into effect. *Medlar* v. *Aetna Ins. Co.,* 127 Vt. 377, 344, 248 A.2d 740 (1968) ; *State* v. *Bartlett,* 128 Vt. 618, 270 A.2d 168 (1970). This is the rule applicable here.

The facts are not disputed in any material respect.

On April 4, 1971, two officers of the Brattleboro police department observed petitionee's automobile at a gasoline station with a flat tire, showing evidence of having been driven in that condition for some time, and a hubcap missing. Another motorist at the station told the officers that the respondent had driven his automobile into the station and appeared to be in an intoxicated condition. After the officers had interviewed the respondent and had found the missing hubcap and broken glass on the so-called North Bridge on Route 5, Putney Road, in Brattleboro, they took the respondent in custody. The respondent had driven from the Elk's Club on the Putney Road and made statements which indicated he had been drinking. He showed the usual signs of being under the influence, a strong odor of alcohol on his breath, lack of muscular coordination and staggering when walking.

The officers advised the respondent of his rights and read an implied consent form used by the police department in cases of this nature. They then asked him which test he wanted to take but he first wanted to read the form himself. After several minutes he said to the officers "I want a doctor to give me the breath test." The officers explained that the doctor could not give him the breath test but that a state trooper would give it. Respondent still insisted he wanted a doctor to give the breath test but was again told the state police officer would administer it. Also he was told that "If he wished another test by his own doctor of his choice" that this would be administered later. The officers had the breath test set up and the respondent then requested a saliva test. The police officers explained that they could not give this test because facilities were not available to do so. The respondent continued to request the saliva test. The two state troopers present also tried to explain to the respondent that the saliva test could not be given and why, but he still wanted it. The

respondent was then told to "either state another test you wish to take or we'll have to take it as a refusal." He still insisted on a saliva test. This ended further discussion with the respondent concerning his submission to a test and none was administered.

From this course of events it is readily apparent that the arresting officers fully explained the requirements of the implied consent law to the respondent. He was made aware what the available tests were and the consequence of his refusal to submit to one of such chemical tests. In this case the officers did all that was required of them by the statute.

The court below made the following finding:

> "4. From the evidence, the Court finds that the officers did have sufficient reason to believe that respondent had been operating a motor vehicle while under the influence of intoxicating liquor and that no test was administered . . . ."

The court found that there was no failure or refusal of the respondent to submit to a chemical test within the meaning of 23 V.S.A. § 1205. The finding is bottomed on the conclusion of the court that the saliva test must be offered and by choosing it, the respondent had consented to take a chemical test within the statutory provisions. These conclusions of the court as a basis of its judgment are erroneous and consequently its judgment cannot stand.

 When a refusal to submit to a chemical test is present, the only relevant question for the court to decide at the summary hearing was whether the facts and circumstances provide a reasonable basis for the officer's judgment. The finding pertinent to that issue, specified in 23 V.S.A. § 1205, and mandatory to a suspension of respondent's driver's license was embodied in paragraph 4 of the findings, quoted *supra*. The reasonableness of the respondent's failure to take a test was not at issue nor could it be a basis for his action. The record amply supports this finding of the trial court.

 23 V.S.A. § 1202 provides that the person "is deemed to have given his consent to the taking of a sample of his blood, breath, urine or saliva." And 23 V.S.A. § 1205 refers to

a refusal "to submit to a chemical test." Applying the foregoing rule of construction, it is the plain language of these statutes that the arrested operator has thereby consented to all four tests as a contingency to the enjoyment of his privilege to operate a motor vehicle. And it is necessary for the operator to select and submit to a test that is reasonably available if he is to avoid the effect of a summary hearing and the imminent danger of a suspension of his license for six months.

We do not believe our legislature intended to weaken the consent law and reduce the effectiveness of the law or protection of the public from drunken drivers. To adopt the petitionee's point of view would be to do just this and allow a respondent to circumvent the law.

It is not the right of the officer to demand or specify which test shall be given to the exclusion of any of the other reasonably available tests. On the other hand, the respondent does not have this right either. The proper action of the officer is to request that "a test" be taken by the respondent. Here, the officer presented the operator with the option of three reasonably available tests. Given the choice of the reasonably available tests, as he was, the law required the respondent to submit to one of such tests and lacking this, it was tantamount to a refusal.

The facts in this case establish that the respondent decided on a breath test but insisted on it being given by a physician—a right the statute does not grant him. Such tests are given by state police officers. He then chose the saliva test and stood firm on this selection, refusing any other test in spite of his implied consent to take a test. His decision does not exculpate him from a six month suspension of his operator's license.

It is thereupon ordered:

*Petition is sustained, issuance of the writ ordered, and the proceedings being certified to this Court, ordered that the judgment of Vermont District Court, Unit No. 6, Windham Circuit, is vacated. Let the judgment be certified to said District Court for further proceedings consistent with the views expressed in the opinion.*