## Donald Joseph Veilleux v. Honorable Lewis E. Springer, Jr., George P. Stokes, and James E. Malloy, Commissioner of Motor Vehicles

[300 A.2d 620]

No. 2-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed January 5, 1973

34

*Rexford & Kilmartin,* Newport, for Plaintiff.

*James M. Jeffords,* Attorney General and *Martin K. Miller,* Assistant Attorney General, for Defendants.

**Daley, J.** The plaintiff, Donald Joseph Veilleux, has brought to this Court a petition for extraordinary relief under the provisions of Rule 21, Vermont Rules of Appellate Procedure, challenging the Vermont implied consent law found in 23 V.S.A. §§ 1201–1205, and specifically § 1205. The relief requested is the vacation of an order made by the Honorable

Lewis E. Springer, presiding Judge of the Vermont District Court, Unit No. 4, Orleans Circuit, Newport, Vermont, requiring that the plaintiff surrender his operator's license to the court.

The factual situation culminating in the bringing of the petition is as follows: On October 23, 1971, the plaintiff was arrested and charged with the violation of the motor vehicle laws, 23 V.S.A. § 1201, operating a motor vehicle upon the public highway while under the influence of intoxicating liquor.

At the time of his arrest, the state police officer read to the plaintiff provisions of the Vermont implied consent law and the so-called *Miranda* warning contained on a printed form utilized by the arresting officer. The plaintiff was arraigned upon the charge in the District Court of Vermont, Unit No. 4, Orleans Circuit, in Newport, Vermont, at which time he entered a plea of not guilty. On December 6, 1971, a hearing was held in the same court pursuant to the provisions of 23 V.S.A. § 1205, which provides:

> "If the person refuses to submit to a chemical test, it shall not be given. If the person is charged with a violation of the vehicle laws and upon arraignment enters a plea of not guilty, the court at the arraignment or as soon thereafter as is practicable shall hold a summary hearing, and take evidence relating to the reasonableness of the officer's belief that the respondent was operating, attempting to operate or in actual physical control of a vehicle while under the influence of intoxicating liquor or drugs. Upon a finding by the court that the officer had sufficient reason to believe that the respondent · was so operating, attempting to operate, or in actual physical control of a motor vehicle, the respondent's operator's license or non-resident operating privilege or the privilege of an unlicensed operator to operate a motor vehicle shall be suspended for a period of six months and the respondent shall deliver his operator's license, if any, to the court and the court shall forward it forthwith to the commissioner of motor vehicles."

As a result of the testimony introduced at the hearing, the court found that there had been a reasonable request made by the officer at the time of the plaintiff's arrest for a chemical test, and that such test was refused by the plaintiff. The court ordered the plaintiff to deliver to it his operator's license, but upon motion made by his counsel, suspended the operation of such order for a period of thirty days in order to afford counsel an opportunity to seek relief resulting in the petition now before us.

Upon the filing of this petition and an affidavit of plaintiff's attorney, the presiding Judge of the District Court and the State's Attorney of Orleans County, the Honorable George P. Stokes, were temporarily enjoined by a Justice of this Court from enforcing the order requiring the surrender of plaintiff's license on January 6, 1971. During the pendency of the cause in this Court, the Honorable James E. Malloy, Commissioner of Motor Vehicles, State of Vermont, was joined as a party defendant, and the injunction previously issued was made applicable to him.

An examination of the files and records of the District Court reveal that on May 30, 1972, while the petition was pending in this Court, an entry of *Nolle Prosequi* was made in the case pending in the lower court charging the plaintiff with a violation of 23 V.S.A. § 1201. On the same date, the plaintiff was charged with a violation of the motor vehicle law occurring at the same time and place set forth in the previous charge, to which he entered a plea of guilty and was sentenced to pay a fine.

It is the plaintiff's primary contention that 23 V.S.A. § 1205 is unconstitutional on its face. His claim is it violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. This is because it exposes him to the risk of a civil penalty resulting from the summary hearing concerning the reasonableness of the officer to believe that the plaintiff was operating a vehicle while under the influence of alcohol held at the time when he asserts his right to plead not guilty. But he would not be subject to this civil penalty if he enters a plea of guilty. He also contends that this statute violates his right to equal protection under the law guaranteed in the Fourteenth Amendment of the United States Constitu-

tion and Chapter One, Article Seven, of the Declaration of Rights of the Vermont Constitution. This statute, he maintains, mandates a six month license suspension upon him for withdrawing his implied consent to take a chemical test due only to the fact that he plead not guilty to the offense with which he was charged while others who withdraw their implied consent and plead guilty to the charge against them do not suffer this suspension.

All persons who operate or attempt to operate a motor vehicle upon the highways of this state are deemed to have given their consent to the taking of a sample of their blood, breath, urine, or saliva for the purpose of having it tested for alcohol or drug content. 23 V.S.A. § 1202. Implied consent statutes have been enacted in most of the fifty states. The compelling pressures of injury, damage or death upon the highways because of drunken drivers demand the regulation of the use of alcohol by those who by such use reap this holocaust of death and destruction. Such statutes uniformly provide for a license suspension upon a refusal of testing procedures. In the great majority of the states suspension occurs whenever a test is refused regardless of the operator's conduct in any associated criminal proceedings.

The implied consent law of the state of Vermont provides for a summary hearing in the nature of an administrative proceeding which constitutes the determination of a civil matter involving only the question of whether the accused should or should not be continued in his privilege as a licensed driver for a period of six months. *State* v. *Mastaler*, 130 Vt. 44, 50, 285 A.2d 776 (1971) ; *State* v. *Dellveneri*, 128 Vt. 85, 88, 258 A.2d 834 (1969). However, such suspension can only occur in the event of a not guilty plea upon a finding by the court that the officer had sufficient reason to believe that the operator was operating or attempting to operate while under the influence of alcohol or drugs and had refused the requested chemical test. It can thus be seen that this procedure deviates from the pattern in the other states with implied consent laws which provide a suspension for withdrawal of implied consent regardless of the plea in subsequent criminal proceedings.

█ It is fundamental that a person accused of a criminal offense has a right to plead not guilty, for only after such a plea may he exercise his rights pertaining to the actual trial of such offense guaranteed in Article Ten of the Declaration of Rights of the Vermont Constitution:

> ". . . [T]o be confronted with the witnesses; to call for evidence in his favor, and a speedy public trial by an impartial jury of the country; without the unanimous consent of which jury, he cannot be found guilty; nor can he be compelled to give evidence against himself; nor can any person be justly deprived of his liberty, except by the laws of the land, or the judgment of his peers . . . ."

Such also is the case of the rights guaranteed in the Fifth and Sixth Amendments made applicable to the states through the Due Process of the Fourteenth Amendment of the United States Constitution. See generally Annot., 18 L.Ed.2d 1388, 1401–10 (1968).

By conditioning the summary hearing in 23 V.S.A. § 1205 on the entry of the plea of not guilty, only after which, depending on the outcome of the hearing, does the accused suffer a six-month operator's license suspension, this statute is brought within the constitutionally impermissible ambit of *United States* v. *Jackson*, 390 U.S. 570 (1968). See also *Pope* v. *United States*, 392 U.S. 651 (1968). In *Jackson*, the United States Supreme Court found that feature of the Federal Kidnapping Act unconstitutional which enabled a defendant who pleaded not guilty and requested a trial by jury to receive the death sentence if found guilty because if the defendant waived his right to jury trial and took a bench trial or pleaded guilty, the most he could receive was a life sentence. In its discussion of how the act affected the right to plead not guilty and the right to demand a jury trial, the Court in *United States* v. *Jackson, supra*, 390 U.S. at 583, stated:

> "For the evil in the federal statute is not that it necessarily coerces guilty pleas and jury waivers but simply that it needlessly encourages them. A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right."

This is exactly the effect of 23 V.S.A. § 1205. It imposes the threat of a six-month operator's license suspension upon those who have withdrawn their implied consent to take a chemical test only upon their entry of a plea of not guilty, in a subsequent criminal proceeding, but no such threat is imposed upon those who have withdrawn their consent and enter a plea of guilty. Such a threat on those who exercise their constitutional right to plead not guilty places an impermissible burden not only on the assertion of this right but on all other rights which can only be exercised in the subsequent trial following such a plea.

The imposition by 23 V.S.A. § 1205 of the threat of a six-month license suspension on only those who plead not guilty to a violation of the vehicle laws of all those who have withdrawn their implied consent to take a chemical test also creates a classification of such a nature as to come into conflict with the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The mandate of equal protection under the law comes not only from the Federal Constitution but our State Constitution as well. Vt. Const. Ch. 1, Art. 7; *State* v. *Auclair,* 110 Vt. 147, 161, 4 A.2d 107 (1938). Both constitutions prohibit legislative classifications which are arbitrary or irrational. *State* v. *Auclair, supra; Gulf, Colorado & Santa Fe Railway Co.* v. *Ellis,* 165 U.S. 150, 155 (1897). If the classification is not arbitrary and has a reasonable connection with a permissible legislative or administrative purpose, it will be presumed constitutional. *Dunham* v. *Pulsifer,* 312 F.Supp. 411, 416 (D. Vt. 1970) ; *State* v. *Solomon,* 128 Vt. 197, 199, 260 A.2d 377 (1969).

The purpose of the implied consent law is to lessen, so far as possible, the danger to the public from intoxicated persons driving on the highways. *State* v. *Mastaler, supra,* 130 Vt. at 47. By conditioning the privilege of the granting of a license to operate a motor vehicle on the operator's consent to submit to a chemical test to determine the presence or absence of alcohol in the body fluid of an operator, the Vermont implied consent law encourages the availability of scientific evidence to make such a determination. *State* v. *Mastaler, supra.* Such a statutory scheme has been long recognized by

the United States Supreme Court to be a constitutionally valid method of detecting alcoholic content in the body fluids of an operator of a vehicle in order to combat the threat of the drunken driver to the public safety. *Breithaupt* v. *Abram,* 352 U.S. 432, 439 (1957). See also *Schmerber* v. *California,* 384 U.S. 757 (1966).

However, under the statutory scheme as set out in 23 V.S.A. § 1205, the license suspension incurred for withdrawing the consent to take a chemical test to determine the amount of alcohol content falls only upon those who exercise the fundamental right to plead not guilty to a criminal charge upon which the constitutional rights guaranteed to a defendant in criminal proceedings are contingent.

The right to maintain one's innocence when charged with a violation of the criminal law stems not only from the federal and state constitutions, but is in the words of Justice Cardozo, ". . . so rooted in the traditions and conscience of our people to be ranked as fundamental." *Snyder* v. *Massachusetts,* 291 U.S. 97, 105 (1934), and is ". . . implicit in the concept of ordered liberty." *Palko* v. *Connecticut,* 302 U.S. 319, 325 (1937). See also *Rochin* v. *California,* 342 U.S. 165, 169 (1952), (opinion by Justice Frankfurter).

The right to plead not guilty is no less important than the right to equal legislative representation. See *In re Senate Bill 177,* 130 Vt. 358, 294 A.2d 653 (1972). Any classification affecting a fundamental right of this stature ". . . must be carefully and meticulously scrutinized." *Reynolds* v. *Sims,* 377 U.S. 533, 562 (1964). Unless such classification which serves to penalize the exercise of that right can be shown to promote a *compelling* governmental interest, it is unconstitutional. *Shapiro* v. *Thompson,* 394 U.S. 618, 634 (1969).

In this case, the imposition of the six-month suspension upon only those who plead not guilty to a violation of the vehicle laws cannot be justified by the compelling state interest of providing a statutory scheme for the detection of the alcoholic content in the body fluids of a vehicle operator because of all those who withdraw their consent to take the chemical test provided for such detection, only those who exercise their fundamental right to maintain their innocence to a criminal charge suffer the six-month license suspension.

Therefore, this statute, 23 V.S.A. § 1205, operates against the plaintiff as to not only be violative of the Due Process Clause but also the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article Seven of the Declaration of Rights of the Vermont Constitution.

Our holding must next give rise to the question of whether the statute as a whole must fall simply because a single feature of the statute is constitutionally deficient. This question was also given careful consideration in *United States* v. *Jackson, supra,* 390 U.S. at 585–86, where the following test was set forth by quoting from *Champlin Rfg. Co.* v. *Commission,* 286 U.S. 210, 234 (1932), as follows:

> "The unconstitutionality of a part of an Act does not necessarily defeat . . . the validity of its remaining provisions. Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law."

As a result of applying the provisions of the Federal Kidnapping Act to this test, the court in *United States* v. *Jackson, supra,* 390 U.S. at 586, found the capital punishment clause severable from the remainder of the Act.

In the case at bar the feature of 23 V.S.A. § 1205 in question is also a functionally independent part of the statute. Its elimination in no way defeats the purpose of the implied consent law. Under such a circumstance, it is inconceivable that the legislature which enacted this statute would have chosen to discard the entire statute if informed that it could not include that feature before us. For this reason the unconstitutionality of that feature does not require the defeat of the statute as a whole. It is therefore obvious that that portion of 23 V.S.A. § 1205 which provides: ". . . and upon arraignment enters a plea of not guilty . . ." must be severed from the rest of the statute thereby leaving the remainder of the statute an operative whole. By such an opera-

tion, the holding of the administrative summary hearing to determine the reasonableness of the officer's belief that the accused was operating a vehicle while under the influence of alcohol will not depend on the plea entered to the violation of the vehicle laws with which the accused is charged. The constitutional infirmity is removed from the statute, and the legislative intent providing for a suspension of the privilege of holding an operator's license for the failure of the holder to abide by the implied consent condition remains in full effect.

The plaintiff also claims that the failure of the arresting officer having given the accused a *Miranda* warning before the reading of the implied consent law to make an appropriate distinction between the rights given under the *Miranda* warning and the obligations and duties imposed upon the accused under the implied consent law made the officer's request an unreasonable one and justified accused's refusal so as to remove his refusal from the effects of the implied consent law. With this contention we cannot agree.

■ The warnings called for in *Miranda* v. *Arizona*, 385 U.S. 436 (1966), do not apply to blood or chemical tests requested or taken under our implied consent law. *State* v. *Bassett*, 128 Vt. 453, 456, 266 A.2d 438 (1970). The type of evidence sought to be obtained is physical as contrasted to testimonial; the United States Supreme Court in *Schmerber* v. *California, supra,* having the question of blood withdrawal before it held that the withdrawal of blood on a police officer's request despite the respondent's refusal to consent thereto did not violate his Fifth Amendment privileges against self-incrimination, since the test evidence although a product of compulsion was neither respondent's testimony nor evidence relating to some communicative act or writing by him. Further, although the plaintiff here claims that the wording of the form employed by the officer was of a nature to cause confusion, the record fails to demonstrate any confusion on the part of the plaintiff. This claim is not sustained.

For the reasons hereinbefore stated we here hold that only so much of 23 V.S.A. § 1205 as reads ". . . and upon arraignment enters a plea of not guilty . . ." to be invalid; in all other respects, 23 V.S.A. § 1205 is held to be valid.

*The order of the District Court in this cause is set aside, and the plaintiff shall not be required to surrender his motor vehicle operator's license for the purpose of suspension as provided in 23 V.S.A. § 1205 as ordered by the court.*

**Chief Justice Shangraw** and **Mr. Justice Barney** dissent.

**Shangraw, C.J.,** dissenting. 23 V.S.A. § 1202 providing for a chemical test applies to any person who operates, attempts to operate or is in actual physical control of any vehicle in this state. By so doing he is deemed to have given his consent to the tests enumerated in the statute for the purpose of determining the alcoholic or drug content in his blood, breath, urine or saliva. Upon the issuance of an operator's license to the plaintiff by the commissioner of motor vehicles, plaintiff became bound by the provisions of the foregoing statute. He accepted the provisions of the statute as a prerequisite to being granted a license to become a motor vehicle operator.

Then follows 23 V.S.A. § 1205 providing for a summary hearing if a person is charged with a "violation of the vehicle laws" and upon arraignment enters a plea of not guilty. The court on hearing then takes evidence relating to the reasonableness of the officer's belief that the respondent was operating, attempting to operate or in actual physical control of a vehicle while under the influence of intoxicating liquor or drugs.

It is to be noted that Section 1205 is not limited to persons initially charged with operating, etc., a vehicle while under the influence of intoxicating liquor or drugs, but applies to those in "violation of the vehicle laws."

A summary hearing on the reasonableness of refusal to take an intoxication test, and the possibility of resultant loss of an operator's license for six months is not a criminal proceeding. It is in the nature of an administrative proceeding and is the determination of a civil matter, involving only the question of whether the respondent should or should not be continued in his privilege as a licensed driver for a period of six months. *State* v. *Dellveneri,* 128 Vt. 85, 88, 258 A.2d 834 (1969); *State* v. *Mastaler,* 130 Vt. 44, 50, 285 A.2d 776 (1971).

The summary hearing is separate and apart from any subsequent prosecution, or the results thereof, whether it be for operating a vehicle while under the influence of intoxicating liquor, a violation of 23 V.S.A. § 1201, or by otherwise violating the vehicle laws.

A suspension of six months under the provisions of Section 1205 neither enhances or lessens the statutory penalty in the criminal case if found guilty.

In the case of *United States* v. *Jackson*, 390 U.S. 570 (1968), the Federal Kidnapping Act mandated an increased penalty of a person who pleaded not guilty and following a trial was found guilty. The Act was held to be unconstitutional. This is not the case under consideration. The six months suspension under the statute is not intended to be in any manner reflected, favorably, or unfavorably, in the final disposition of the criminal case.

In my judgment, the statutes under consideration are unambiguous and enacted by the Legislature under the state's general police power for the protection of the public. I see no constitutional infirmity therein. Plaintiff chose not to take the test rather than hazard its result. He made his own bed and should be required to lie in it.

The fact that an entry of *nolle prosequi* was made in the lower court charging the plaintiff with a violation of 23 V.S.A. § 1201, and later charged with a violation of the motor vehicle law occurring at the same time and place as set forth in the previous charge, to which violation a plea of guilty was entered, does not absolve him from the provisions of § 1202 nor the consequences by way of a six months suspension under § 1205.

It is my view that the order of the lower court should be affirmed.

**Barney, J.** (in dissent). I cannot deny that the result reached by the majority in this case is safely within constitutional limits. Indeed, my difference with the opinion is based on what I view to be a needless sensitivity to presumed constitutional restrictions. It seems to me that the preservation of whatever functional independence remains for state sovereignty requires careful weighing of federally required

constitutional standards. I view it as a duty of this Court to support the decisions of our own Legislature to the fullest extent possible consistent with the requirements of state and federal constitutions, whatever our personal views may be as to preferable language or even the wisdom involved in a particular enactment.

With those considerations put foremost, I see no justification for calling the present version of 23 V.S.A. § 1205 constitutionally infirm. As I understand the majority opinion, it rests on the doctrine of *U.S.* v. *Jackson,* 390 U.S. 570 (1968), which prohibits the needless burdening of the exercise of fundamental constitutional rights. I join with the Chief Justice in pointing out that the coupling of the exercise of the right of trial by jury to the threat of a death penalty, for no stated policy reason, is certainly properly constitutional condemnable, but a far cry from the statutory situation here.

I find it not only significant, but striking, that the United States Supreme Court has found it proper to burden certain constitutional rights with the intrusion of a compelled blood test. *Breithaupt* v. *Abram,* 352 U.S. 432, 1 L.Ed.2d 448, 77 S.Ct. 408 (1957); *Schmerber* v. *California,* 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826 (1966). The justification, in the words of Mr. Justice Clark, results from "The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield." *Breithaupt* v. *Abram, supra,* 352 U.S. at 439.

This is the very basis of the legislation questioned in the majority opinion. In the face of such language from the highest court in the land, how can the present statutory scheme be challenged as a "needless" burden?

Having in mind that it is invidious discrimination that constitutional proscriptions are directed to, it seems certainly possible to support the existing version of 23 V.S.A. § 1205, as this Court is bound to do, if possible. The purpose of the statute is to make physical evidence available to the prosecution where a person is suspected of operating a motor vehicle when intoxicated. There is a legislatively created contractual agreement imposed to accomplish this, through the implica-

tion of consent, with suspension the penalty for breach of performance. This is properly not held to be invidious.

The ability to comply with the provision requiring submission to any of the tests authorized is transitory. The passage of time renders test results worthless. Thus, the ability to fulfill the statutory obligation and perform the implicit agreement is likewise short-lived. A breach rapidly becomes irretrievable.

Although it may become impossible to provide the precise physical evidence, the statutory purpose can as effectively be fulfilled by a concession that the results would be incriminatory. This is accomplished by a plea of guilty, and is recognized by the statute. In effect, an operator is given a second opportunity to perform his obligation and avoid the penalty of a breach. This hardly seems invidious.

Classification, as an aid to constitutional logic, requires careful handling lest it degenerate into tautology or question-begging. The infinite possibilities of defining classes will frequently reflect the point of vantage from which the definer views the problem. Even so, perhaps it would be helpful to tender an alternate classification design attributable to 23 V.S.A. § 1205 to that advanced by the plaintiff.

That statute sets apart those who comply with the testing provision purposes from those who do not. It allows for admission to the unpunished class by two kinds of performance. The penalty is applicable only to those who reject both opportunities to perform. Whatever additional considerations attach to his choice in the second or plea situation arise on account of his voluntary decision, in the first instance, to refuse to be tested. Although benefits may accrue from a guilty plea, at the second stage, they are not such as, in my view, make the second plea compelled or involuntary. Social or constitutional policy does not require that one who has failed to comply with the testing law be given larger consideration than the operator who honors his commitment to the public. I would hold that the right to perform by way of entry of a plea of guilty under 23 V.S.A. § 1205 is not an unconstitutional provision.

I would uphold the statute.