2011 VT 56

**STATE of Vermont v. Theodore de MACEDO SOARES**

[26 A.3d 37]

No. 10-241

¶ 1. May 17, 2011. This is a discretionary appeal of the district court's decision upholding the judicial bureau's judgment against defendant for speeding on an interstate highway. We affirm.

¶ 2. On the afternoon of June 5, 2009, defendant was stopped on Interstate 91 and issued a citation for speeding. The citation stated that defendant was traveling eighty miles per hour in a sixty-five-mile-per-hour speed zone. The citation further stated that the accused could either pay the specified waiver amount or challenge the ticket, in which case, if the prosecution proved its case, any fine within the specified penalty range could be imposed. The citation noted that the waiver amount plus $50 for court costs is commonly assessed following a hearing. The citation indicated a waiver amount of $140 and a penalty range from $36 to $1186.

¶ 3. Defendant elected to contest the ticket at a judicial bureau hearing. At the hearing, he did not testify but cross-examined the only witness for the State — the state trooper who had cited him for speeding. At the close of the hearing, the hearing officer upheld the citation and fined defendant $140 plus $50 for court costs, noting that defendant had been stopped for speeding nine times. Defendant appealed to the district court, which upheld the judicial bureau's judgment. This Court then granted defendant's request for permission to appeal.

¶ 4. Defendant first argues that the traffic citation is unconstitutional because: (1) the penalty range applies only when a defendant chooses to maintain a constitutionally protected right to challenge the citation; (2) the $50 in court costs is assessed only if a defendant is found guilty following a hearing; (3) the waiver amount is an improper incentive to settle that chills a defendant's right to challenge a citation; (4) the solicitation of a guilty plea violates the principle of a presumption of innocence; and (5) the process for issuing a citation does not assure a knowing and intelligent waiver of constitutional rights.

¶ 5. We find no constitutional violation and no merit to these arguments. Defendant was cited for a civil traffic violation, not a criminal offense; therefore, the principal cases he relies on to support his constitutional arguments — *United States v. Jackson*, 390 U.S. 570 (1968), and *Veilleux v. Springer*, 131 Vt. 33, 300 A.2d 620 (1973) — are inapposite. In *Jackson*, the Supreme Court struck down the death penalty clause of the Federal Kidnapping Act, which allowed the death penalty to be imposed only on those defendants who were found guilty after pleading not guilty and requesting a jury trial. 390 U.S. at 585. The Court concluded that applying the death penalty only to defendants who assert their right to contest their guilt before a jury unconstitutionally chilled defendants' right to plead not guilty and to demand a jury trial. *Id.* at 581. In *Veilleux*, we applied the *Jackson* rationale to strike down a statute that provided for a six-month driver's license suspension only for defendants who pled not guilty after being charged with driving while intoxicated. 131 Vt. at 38-39, 300 A.2d at 624. We emphasized that the provision could not pass constitutional muster because the license suspension "falls only upon those who exercise the fundamental right to plead not guilty to a criminal charge upon which the constitutional rights guaranteed to a defendant in criminal proceeding are contingent." *Id.* at 40, 300 A.2d at 625.

¶ 6. The instant case, in stark contrast to those relied upon by defendant, involves a civil traffic fine that can be either paid in a specified amount without recourse to a hearing or challenged and adjudicated in a civil proceeding before the judicial bureau. Unless a fundamental right is at stake, which is not the case here, being a civil defendant is "fundamentally different" from being a criminal defendant. *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002). Thus, the constitutional rights implicated in the cases cited by defendant are not implicated here. See, e.g., *Shaw v. Vt. Dist. Court*, 152 Vt. 1, 6, 563 A.2d 636, 639-40 (1989) (holding that defendant had no constitutional right to jury trial in civil proceeding unknown at common law). Defendant may have a statutory right to a jury trial with respect to this traffic violation, but he waived that right and has alleged a statutory violation.

¶ 7. The citation advised defendant that he could either pay a specified amount set by a legislatively established panel or challenge the fine in a civil administrative proceeding before the judicial bureau. The citation also indicated the full range of fines allowed under the statute allegedly violated in the event defendant wished to challenge the violation. If defendant were correct that providing the option of paying a waiver amount violates the constitutional rights of those cited for traffic violations, all persons cited would be required to participate in administrative proceedings regarding minor traffic violations. Nor could participation in administrative proceedings be avoided if defendant were correct that any payment waiver had to be knowing and intelligent. That would require those cited to engage in colloquies before a hearing officer or judge to assure that a requested waiver was knowing and intelligent. Fortunately for citizens who are ticketed, such criminal law safeguards are neither legislatively nor constitutionally required with respect to civil traffic violations.

¶ 8. Next, defendant contends that the judicial bureau erred in admitting evidence from the LIDAR laser device used to detect his speed, arguing: (1) the prosecution failed to show that evidentiary hearings had been conducted on the admissibility of this novel technology; (2) there was no proof that the device had been tested according to the manufacturer's specifications, that the operator had been trained in its operation, or that the officer had the training and capability to visually estimate speeds to any degree of accuracy; (3) the prosecution failed to submit a certification of accuracy for the device; and (4) the device was improperly tested.

¶ 9. As with the constitutional arguments, we reject these evidentiary claims of error. Proceedings before the judicial bureau and on appeal to the district court are governed by Rule 80.6 of the Rules of Civil Procedure, V.R.C.P. 80.6(a), and "are intended to be expedited and summary." *Shlansky v. City of Burlington*, 2010 VT 90, ¶ 19, 188 Vt. 470, 13 A.3d 1075. In proceedings of this nature, the Rules of Evidence do not apply, but rather evidence "is admissible if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." V.R.S.C.P. 6(b). In this case, the officer who stopped defendant testified that he visually estimated defendant's speed at eighty miles per hour, that the reading from his LIDAR laser device confirmed his estimate, that he had been trained and certified in the use of the device, that he had successfully performed the manufacturer's recommended tests on the device before and after using it the day he stopped defendant, and that no "certificate" of accuracy existed. This testimony was more than sufficient for the hearing officer and the district court to determine that defendant had been speeding fifteen miles per hour above the posted speed limit.

¶ 10. Before the traffic bureau, defendant moved to dismiss all evidence con-

cerning use of laser technology for "lack of foundation" because "there is no judicial notice of laser." In making this argument, defendant cited an Illinois appellate court case rejecting a trial court's judicial notice of an evidentiary hearing held in an unrelated trial court case in which the court found the use of a laser device to be generally accepted. See *People v. Canulli*, 792 N.E.2d 438, 444-45 (Ill. App. Ct. 2003). On appeal, in a one-sentence argument, defendant asserts that the court erred in admitting the LIDAR results because radar and LIDAR are not the same, no Vermont authorities confirm the reliability or admissibility of LIDAR technology, and the district court did not give "judicial notice" of the reliability of the technology. We find no merit to this argument. Defendant has not identified any evidence suggesting that the LIDAR device incorporates a novel technology or is significantly different from or less accurate than other speed-detection devices. Indeed, several jurisdictions, including Illinois, have held that the reliability of this technology has been sufficiently demonstrated to allow its introduction into evidence without first holding an underlying evidentiary hearing on its reliability. See, e.g., *State v. Williamson*, 166 P.3d 387, 389-90 (Idaho Ct. App. 2007) (citing other jurisdictions that have accepted general reliability of laser device in support of holding "that laser speed detection devices are generally reliable and their results may be admitted into evidence in Idaho courts" without either taking specific judicial notice or requiring scientific evidence of laser's reliability); *People v. Mann*, 922 N.E.2d 533, 537-38 (Ill. App. Ct. 2010) (concluding that decisions from other jurisdictions "are ample authority that the use of LIDAR to measure the speed of moving vehicles is based on generally accepted scientific principles"). Defendant's reliance upon *Canulli* is unavailing insofar as the appellate court in that case

reversed the trial court because it had relied upon an inadequately litigated, nonbinding decision in another trial court case involving a different type of laser technology from the technology being challenged in *Canulli*. See *Mann*, 922 N.E.2d at 535-36; *Canulli*, 792 N.E.2d at 444-45. Accordingly, the hearing officer did not abuse his discretion in admitting results from the use of the LIDAR laser device without first holding an evidentiary hearing on the device's reliability.

¶ 11. Finally, according to defendant, the requirement that he pay court costs, including filing fees, to the judicial bureau, the district court, and this Court, as well as the necessity that he pay for a transcript of the judicial bureau hearing, offends Chapter I, Article 4 of the Vermont Constitution, which, in relevant part, provides that "every person ought to obtain right and justice, freely, and without being obliged to purchase it." Defendant urges us to adopt a literal reading of Article 4, which, in his view, would mean that requiring him to incur costs for filing fees and a transcript is essentially requiring him to "purchase" justice. Again, we find no merit to this argument. "Filing fees for civil suits have been challenged on constitutional grounds before, without success." *Lewis*, 279 F.3d at 528-29 (citing cases). "The Supreme Court has never held that access to courts must be free; it has concluded, rather, that reasonably adequate opportunities for access suffice." *Id.* at 528 (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). Indeed, the First Congress of the United States provided for filing fees by all plaintiffs, *Lewis*, 279 F.3d at 528, and this Court upheld filing fees even in criminal cases as early as 1888, *In re Marron*, 60 Vt. 199, 203-04, 12 A. 523, 526 (1888).

¶ 12. Nor is there a constitutional bar to requiring only losing parties to pay court-related fees. Cf. *Fleury v. Kessel/Duff Constr. Co.*, 149 Vt. 360, 364, 543 A.2d 703,

705 (1988) (needing "little analysis" to reject claim that statute making attorney's fees recoverable against employer when employee prevails in workers' compensation cases violates Article 4's prohibition against requiring litigants to purchase justice). While there is a fundamental right to access the courts, there is no constitutional guarantee that a litigant will be able to do so without expense. Defendant's citation to the Magna Charta and other historic legal texts does not aid his cause. In relevant part, the Magna Charta was aimed at curtailing the selling of writs. J. Hoffman, *By the Course of the Law: The Origins of the Open Courts Clause of State Constitutions*, 74 Or. L. Rev. 1279, 1286 (1995). No such laudable goal is at issue here.

*Affirmed.*

Motion for reargument denied June 20, 2011.