## In re Adam C. Dixon et als

[183 A.2d 522]

May Term, 1962

Present: **Hulburd, C. J., Holden, Shangraw, Barney** and **Smith, JJ.**

Opinion Filed July 16, 1962

*Charles E. Gibson, Jr.,* Deputy Attorney General, for the State.

*Philip A. Angell, Sr.* and *Black & Plante* for the petitionee.

**Hulburd, C. J.** This case is concerned with the question of whether the Village of Randolph may, under the laws of Vermont, furnish water to customers outside its territorial limits without coming under the jurisdiction of the public service board. The question arose in the following manner:

On March 10, 1961, Adam C. Dixon, along with eight others, addressed a letter to Charles Ross, chairman of the Public Service Commission and Thomas M. Debevoise II, attorney general, which read as follows:

"Dear Sirs:

We, the undersigned, are users of water supplied by the Village of Randolph, Vermont. We live outside the village limits, and therefore may not vote on matters pertaining to the village water department.

We feel that the new rates set by the village water commissioners are unnecessarily high, and we therefore petition the Public Service Commission and the Attorney General that the Public Service Commission take jurisdiction over our water supply to investigate the matter, and to set for us what they consider to be a fair water rate."

The Village of Randolph moved to dismiss this petition on two grounds: (1) that the petition was fatally defective in substance and form, and (2) that the board lacked jurisdiction to act in the matter. A hearing was had in connection with the village's motion, jurisdictional findings were made, and the village's motion denied. To this action the village comes here with its appeal.

The hearing developed the following facts. The Village of Randolph has owned and operated a water system for nearly one hundred years. Its sources of supply in large part come from two springs situated two or three miles outside the village. With this water, together with that obtained from two gravel-packed wells within the village, the municipality serves about six hundred separate customers within the village and some forty non-resident customers lying outside. The policy of the village has been to provide service to anyone within a reasonable distance of the village's lines provided they will pay for the cost of the extension. No discrimination between resident and non-resident customers is made with respect to water rates. The village has never filed its tariffs with the public service

board nor do the findings disclose any past regulation by this agency. The board determined that that portion of the village business carried on outside the village limits was subject to the jurisdiction of the board, and accordingly denied the village's motion to dismiss.

With respect to the form of the petition by which these proceedings were instituted it need only be said that when the board treated the letter from Dixon and others as a proper petition it was acting within its own rules as to practice and procedure. By 30 V.S.A. §11, it was authorized to make rules in this regard. Pursuant to this authority it has promulgated, among others, the following rules:

"4. The Commission, in its discretion, may treat any written communication to it as a petition, concerning any matter coming under its jurisdiction."

"28. Informal protests may be made by letter or other writing and will be filed as received, and will be given such consideration as their contents and nature warrant.

"29. No form of formal protest is prescribed, but in substance the letter or other writing should contain the name and address of protestant, the proceedings or nature of the matter which is the subject of the protest, the action or omission to which objection is made and the grounds for the protest."

We think the intent of these rules is plain and that so long as the application to the board provides the necessary substance to comply with the rules, the board is justified in acting as it might on a more formal petition.

There remains, however, the question of whether there was any authority in the board to invoke in the circumstances of this case. The answer to this question can come only from an examination into what powers have been committed to the board under our law. It was pointed out in *Trybulski* v. *Bellows Falls Hydro-Electric Corp.*, 112 Vt. 1, 7, 20 A.2d 117, that the public service board is a body exercising special powers, solely statutory in nature. Presumption plays no part in aid of its jurisdiction. "It has only such powers as are expressly conferred upon it by the Legislature, together with such incidental powers expressly granted or necessarily implied as are necessary to the full exercise of those granted, and it is merely an administrative board created by the State for carrying into effect the will of the State as expressed by its legislation."

■ In the light of this statement, we turn to the statutes. By 30 V.S.A. §203, the public service board is given general supervision over various enumerated kinds of utilities, that is, companies engaged in services which are specifically described. One of these, pertaining to water, is dealt with in subsection (3) and reads as follows: "(3) A company other than a municipality engaged in the collecting, sale and distribution of water for domestic, industrial, business or fire protection purposes." Although, in general, municipalities by statutory definition are treated as public service companies whenever they act as such, it is at once apparent that in the sale and distribution of water, they are expressly removed from the public service board's control. They are unlike municipalities, for instance, engaged in the sale and distribution of electricity in this respect. The legislature, there, specified no such distinction between municipally owned operations and those of a private corporation. It is the failure of the public service board to take into account this difference in legislative treatment which has led it into error. Relying on *Valcour* v. *Village of Morrisville,* 104 Vt. 119, 158 Atl. 83 and 110 Vt. 93, 2 A.2d 312, which had to do with the sale and distribution of electrical energy, the board has assumed that since this Court has held that the sale of electricity outside the territorial limits of the village of Morrisville subjected the village to the jurisdiction of the board, a similar operation with respect to water was bound to give rise to the same result. To arrive at an analagous result, to start with, at least, one must proceed from a corresponding statute. This is lacking.

Our lawmakers are not bound to legislative symmetry in all their efforts, especially where different considerations enter into the subject matter legislated about. Although it is not the province of the courts to pass upon the propriety of the legislature's action generally—nor as here, in differentiating between water and electricity in conferring jurisdiction upon the public service board—we think it in order to point out that genuine grounds for distinguishing the two exist. The problem of furnishing water to a few customers lying on the outskirts of a municipal corporation is one thing, and the transmission of electrical energy many miles from the municipality is another. Many water systems depend upon gravity for aid to function and hence are subject to certain natural limitations. The possibilities of a far-reaching agency are virtually

eliminated. The main operation is concentrated and takes place under the watchful eye of the electorate who, in a sense, supply their own supervision. The same need for a public service board is lacking. We have no doubt that these are some of the factors which caused the legislature to enact as it did.

But the petitioners urge that the non-resident users have no control at the polls over the operations of the water company as do the resident voters, and so they are at the mercy of the municipality whenever excessive rates are charged. For this reason they argue that even though there is no need for supervision within the village, all extra-territorial activity should come within the public service board's jurisdiction. However, there are other factors to consider. To handle the problem as the petitioners would have it would mean that two bodies, in effect, would be attempting to regulate a single business: the electorate within the village, the public service board without. The result would be conflict. It is doubtful if the public by and large would be served by such a division of authority.

We think it well to have in mind that the non-resident customers of the Village of Randolph are not left entirely without recourse in case they become the objects of unjust discrimination in the matter of water rates. They may resort to equity for relief. *Hall* v. *Swanton,* 113 Vt. 424, 35 A.2d 381. In the present case no discrimination between resident and non-resident customers has been claimed. In fact, it has been expressly found that none exists.

In 1956 the attorney general issued an opinion, (see 1956 Atty. Gen. Op. 256) that the public service board did not have jurisdiction over water to users outside the municipality. The legislature has not seen fit to change the law since this opinion was issued. The fact that it has not done so tends to confirm the propriety of the attorney general's opinion.

The village has cited a number of acts of the legislature, notably 24 V.S.A. §3311, as well as charter provisions, the clear import of which is that the water rates are a matter for the village's determination and not that of the public service board. We deem it unnecessary to resort to these statutes since we are satisfied that the board never received the authority from the legislature which it is attempting to exercise. Furthermore, we are convinced that this is a matter solely

for the legislature to determine and that we cannot extend the jurisdiction of the public service board by decision. For a discussion of the problem generally as it has arisen in other jurisdictions under varying statutory backgrounds, see the note in 127 A.L.R. 94.

The public service board was in error in denying the petitionee's motion to dismiss.

*Petition dismissed.*