## State of Vermont v. Pamela S. Begins

[531 A.2d 595]

No. 85-132

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes,\* JJ.**

Opinion Filed June 12, 1987

*Robert Andres*, Chittenden County Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Martin and Paolini*, Barre, for Defendant-Appellant.

**Peck, J.** Defendant Pamela S. Begins appeals her conviction, following a trial by jury, of operating a motor vehicle while she was under the influence of intoxicating liquor (DUI) in violation of 23 V.S.A. § 1201(a)(2). We affirm.

Two claims of error are presented for our review. First, defendant contends the trial court erred in failing to grant her motion for dismissal of the DUI charge since the arresting officer failed to request that she take a breath test as required by our interpretation of 23 V.S.A. 1202(a) in *State* v. *Lund*, 144 Vt. 171, 475 A.2d 1055 (1984). In that case, a majority of this Court held that an

---

\* Justice Hayes was present at oral argument, but did not participate in the decision.

arresting officer has a duty to request a DUI suspect to take a breath or blood test, and "a violation of the 'duty to request' rule is grounds for automatic reversal . . . ." *Id.* at 176, 475 A.2d at 1059.

Turning to the second claim of error, during the course of the charge conference defense counsel requested the trial court to instruct the jury that defendant had no obligation to take the witness stand and testify; the request went no further. Defendant did not take the stand, and the court instructed the jury as requested, without objection. Nevertheless, defendant alleges error on the part of the trial court in failing to expand the charge to further instruct the jury that defendant's failure to testify "shall not be considered as evidence against her," and argues that its failure "violated her constitutional and statutory right to remain silent."

We address these issues in the order presented.

## I.

The State counters defendant's claim relating to the breath test with the argument that, under *State* v. *Lund*, the police are not required to request a breath or blood sample of a DUI suspect, or to secure such samples, under circumstances where it is impossible to do so. *Lund* at 177, 475 A.2d at 1059. In this case, given the unrelenting and extremely violent, assaultive, and abusive conduct of defendant at the time of her arrest, as disclosed by the record, the State argues that the "impossibility" test was clearly satisfied; accordingly, reversal is not required.

It is unnecessary to resolve the issue as joined by the arguments of defendant and the State on the first claim of error. Both arguments are predicated on language in the majority opinion in *Lund* based on a fact pattern similar to the case before us.

*Lund* was decided by a split Court. The majority opinion was followed by two strong dissents. In the light of continuing reservations within the Court concerning the correctness of the majority opinion, we have reviewed that decision carefully. As a result of our study, a majority of this Court today has concluded, albeit reluctantly, that the earlier opinion was wrong to the extent it required the police to request a breath test of all DUI suspects, regardless of whether prosecution will be instituted solely under 23 V.S.A. § 1201(a)(2).

The 1984 majority opinion relied in large measure on the plain meaning rule of statutory construction, holding, in effect, that the meaning of 23 V.S.A. § 1202(a) is plain on its face. *Lund* at 175, 475 A.2d at 1058. We disagree with that conclusion, particularly so when § 1202 is examined in its entirety and in the light of other statutes which are in pari materia therewith. While we have the greatest respect for stare decisis, and the rule of long-standing legislative acquiescence in the judicial interpretation of statutes, neither can be allowed to prevail when it is determined, as it is today, that an earlier decision is simply wrong. Former United States Supreme Court Justice Robert H. Jackson expressed it this way: "I see no reason why I should be consciously wrong today because I was unconsciously wrong yesterday." *Massachusetts* v. *United States*, 333 U.S. 611, 639-40 (1948).

█ It is the view of the majority that the primary purpose of the legislature, in authorizing breath and blood tests, was to make available to law enforcement officers an alternative and more science-related aid in detecting the extent of alcohol impairment, if any, of persons suspected of DUI. In his dissenting opinion in *Lund*, former Chief Justice Billings stated succinctly the view with which the majority now concur:

> I do not think the legislature, in enacting the implied consent law, intended to eviscerate 23 V.S.A. § 1201(a)(2), which before now allowed prosecution for driving while under the influence based on "[e]vidence of objective symptoms supporting the existence of that state." *State* v. *Jacques*, 130 Vt. 427, 430, 296 A.2d 246, 249 (1972). Today's decision bars any prosecution at all, notwithstanding the existence of probable cause, if the suspected drunk driver is stopped by a state police officer or certified law enforcement officer who does not ask the suspect to take a breath test. This contravenes the primary purpose of 23 V.S.A. § 1201; namely, the protection of the public from drunk drivers.

*Lund* at 179, 475 A.2d at 1061 (Billings, C.J., dissenting).[1]

The Court holds today that law enforcement officers are not required to offer to, or request of, DUI suspects a breath or blood

---

[1] For a detailed analysis of the applicable statutes, see also the dissenting opinion prepared by Justice Peck. *Lund* at 180-97, 475 A.2d at 1061-71 (Peck, J., dissenting).

test as a precondition for prosecution under 23 V.S.A. § 1201 (a)(2). To the extent that our decision in *Lund* is inconsistent with this opinion and holding, it is overruled. Accordingly, we hold there was no error in the trial court's denial of defendant's motion to dismiss.

It is true that the court's denial of the motion was based on other grounds. Nevertheless, "[o]ur rule is that we will affirm a ruling of a trial court upon any legal ground shown by the record, even though the ground may not have been raised below, and may not be briefed." *Braune* v. *Town of Rochester*, 126 Vt. 527, 533, 237 A.2d 117, 121 (1967).

## II.

Although defendant's limited request to charge concerning her decision not to testify may suggest invited error, we agree nevertheless that the trial court did commit error by failing to add to the instructions as given the caveat that her election not to testify could not be considered as evidence against her.

Given the defendant's failure to bring the charge issue to the attention of the trial court, she had little choice on appeal but to argue that the shortcoming in the instruction constituted plain error. *State* v. *Grant*, 127 Vt. 168, 170, 243 A.2d 767, 769 (1968).[2] However, this Court in *Grant* did not rule out the applicability of harmless error assuming that doctrine is appropriate under the circumstances of a particular case. The Court stated: "[T]he State has not established that the erroneous comment and instruction were harmless and did not contribute to the conviction." *Id.* at 170, 243 A.2d at 769; see also *State* v. *Mosher*, 143 Vt. 197, 207-08, 465 A.2d 261, 267 (1983) (recognizing the doctrine of harmless error, but, as in *Grant*, holding it was not applicable under the facts).

In the case before us, unlike *Grant* and *Mosher*, the evidence of defendant's guilt, including the erratic manner in which she was operating her vehicle prior to the stop, the strong odor of intoxicants, her poor performance of dexterity tests, slurred speech, her continuing and extremely violent, abusive, and assaultive behavior, was overwhelming against her. In the face of this evidence, and upon a careful review of the full record, we are

---

[2] *Grant*, like the instant case, involved an instruction to the jury which this Court held was defective for the same reason.

satisfied beyond a reasonable doubt that the error did not contribute to the conviction and was, therefore, harmless. *United States* v. *Hasting*, 461 U.S. 499, 507-09 (1983); *State* v. *Nash*, 144 Vt. 427, 434, 479 A.2d 757, 761 (1984). It did not rise to the level of plain error under V.R.Cr.P. 52(b).

*Affirmed.*

**Gibson, J.**, dissenting. I must dissent. The language of 23 V.S.A. § 1202(a) is too plain on its face to admit of anything but one interpretation: "a mandatory duty on the part of state police officers and law enforcement officers who have the proper certification to request a breath sample when they have reasonable grounds to believe a person was driving while under the influence of intoxicating liquor." *State* v. *Lund*, 144 Vt. 171, 174, 475 A.2d 1055, 1058 (1984).

Inasmuch as the statutory history of § 1202(a) has been previously detailed by this Court in the well-reasoned opinion by Justice Underwood, see *id.* at 174-76, 475 A.2d at 1058-59, it is unnecessary to repeat it here. Suffice it to say that ever since § 1202(a) was first adopted in 1970, the word "shall," as set forth therein, has been recognized by this Court to impose a mandatory obligation on designated law enforcement officers. See *id.* at 176, 475 A.2d at 1059 ("the statute . . . mandates that a test must be requested . . . ."); *State* v. *Welch*, 135 Vt. 316, 321, 376 A.2d 351, 355 (1977) ("In those situations contemplated by §§ 1202 and 1203, the officers are required to make the request that the suspect operator submit to testing."); *State* v. *Mastaler*, 130 Vt. 44, 48, 285 A.2d 776, 779 (1971) ("The statute presently provides that 'a sample shall be taken' . . . .").

Indeed, the top law enforcement officer of the state, the attorney general, when asked for an interpretation, opined: "My staff and I have prepared the following analysis of the new D.W.I. statute . . . . It requires an officer to request a chemical test whenever he has reasonable grounds to believe a person is in violation of the statute." 1970 Op. Atty. Gen. 226. The opinion concluded that "[i]n the face of such mandatory language, it is possible that an officer would be precluded from testifying as to other evidence of intoxication in cases where he did not request submission to a test." *Id.* at 231.

I can only conclude that the majority, in abandoning this well-established, recently confirmed statutory interpretation, is doing so for the sole purpose of reaching what it considers to be a desired result. The majority contends that the previous interpretation of the statute did not accord with the underlying legislative purpose. If that is so, then why has the legislature allowed that interpretation to stand for nearly seventeen years? See *In re Dixon*, 123 Vt. 111, 115, 183 A.2d 522, 524 (1962) (fact that legislature had not seen fit to change the law tended to confirm propriety of attorney general's opinion issued six years earlier). If the law is to be changed after having been consistently applied over a considerable period of time, then it is the legislature which should make the change, for "it is . . . the legislature, not the courts, which has both the right and duty under our State Constitution to make the laws." *Langle* v. *Kurkul*, 146 Vt. 513, 528, 510 A.2d 1301, 1310 (1986) (Peck, J., dissenting).

The author of the majority opinion, a stalwart defender of legislative prerogatives, appears himself to have succumbed to the Lorelei call of judicial legislation. Although we may not always agree with our legislative colleagues, they are the ones who set the course. Today's decision "not only ignores the express directives of the statutes, it usurps the primary rights and powers of the legislature to determine public policy." *Payne* v. *Rozendaal*, 147 Vt. 488, 502, 520 A.2d 586, 594 (1986) (Peck, J., dissenting).

I also note that the Court is marching off in a direction not briefed by the parties, other than a wistful reference in the State's brief to Justice Peck's dissent in *Lund*. I cannot partake of such "legal swashbuckling." *Id.* at 504, 520 A.2d at 595 (Peck, J., dissenting).

Accordingly, I dissent.