Parah v. Lakeside Pharmacy, Inc., No. S0195-02 CnC  (Norton, J., Sept. 30, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                         Docket No. S0195-02 CnC

PARAH

v.

LAKESIDE PHARMACY, INC.

ENTRY

        Defendant Lakeside Pharmacy seeks to bar the testimony of Dr. Beach Conger on the grounds that his opinions and conclusions do not meet the established standards of reliability.  Plaintiff Parah opposes this motion and argues that Dr. Conger's opinions are based on valid medical methodologies, and that the pharmacy's arguments against Dr. Conger go to impeachment and scope of testimony rather than relevance and

reliability.  The court agrees with Parah.

This wrongful death case arises from the admitted misdelivery of clozapine to the decedent, Dorothy Free.  Clozapine is a powerful anit-psychotic medicine that Free had never been prescribed.  A day after this mistake, Free collapsed and was taken to the hospital where she contracted a staphloccocus infection and died.  The question for the jury, which Dr. Conger opines upon, is what caused Free's collapse.  There is evidence that she consumed some of the clozapine and that this new medicine caused her to collapse, but the proof is circumstantial and less than absolute.  Moreover, there is evidence of other potentially intervening causes including a pre-existing heart condition and Free's standing prescription and consumption of oxazepam, a sedative.  Dr. Conger will offer his opinion in the form of expert testimony that Free ingested the clozapine and that this led to her loss of consciousness.

Dr. Conger is a doctor of internal medicine, who deals with patients often in an "altered state of conscisousness," and is not an expert in pharmacology.  His opinion comes from a review of Free's hospital records, her prescription history, autopsy reports, and related documents.  To reach his opinion, Conger employed what is called a "differential diagnosis" method in which he considered the competing potential causes of Free's collapse against her medical history, symptoms, and the time frame between potential ingestion and collapse.  From this Conger concluded that ingestion of clozapine was the most likely cause.

Under V.R.E. 702, a party may call a witness with specialized knowledge to assist the triers of fact to understand the evidence or to determine a fact in issue.  The rule is fairly broad in what constitutes an expert witness.  V.R.E. 702 (expert is qualified by her "knowledge, skill,

experience, training, or education"). In this case, there is no question that Dr. Conger is a qualified as an expert witness in internal medicine, a field he has practiced in and taught for at least 25 years. Dr. Conger also submits that he has had extensive experience treating patients with loss of consciousness, many of which were the result of drug overdoses. The defendant pharmacy argues that this experience does not allow him to comment on causation since neither his background nor methodology are reliable in causation.

Under Rule 702, courts are charged with a gatekeeping function that works to keep unreliable or junk science away from the jury. Through the seminal Daubert case and its progeny, this function has evolved to an evaluation of proposed testimony for reliability. See generally Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); State v. Brooks, 162 Vt. 26, 30 (1993) (adopting the holding of Daubert as a part of Vermont law). In the present case, the Pharmacy challenges Dr. Conger's expert opinion on three grounds, which it argues makes the testimony unreliable.

The first is Dr. Conger's lack of specific knowledge about clozapine. The pharmacy argues that this is a fatal deficit in Conger's knowledge because it casts doubt on his understanding about the drug. The problem with this argument is that it goes more towards weight than reliablity. Admittedly, Dr. Conger is not an expert on clozapine and has not studied the drug. He is, however, familiar with the family of drugs that clozapine belongs to and has treated patients with the same symptoms. Moreover, Conger's methodology does not require a precise knowledge of clozapine because it is more concerned with isolating the clozapine from other potential causes. Thus, if Free's symptoms match the potential reactions of a clozapine overdose within the given time frame and all other causal

possibilities are eliminated, then a differential diagnosis necessarily infers that clozapine was the cause. Zuchowicz v. United States, 140 F.3d 381, 385–87 (2d Cir. 1998) (affirming the trial court's decision to allow a medical expert testify about a causation based solely on differential diagnosis). Dr. Conger's shortcomings in his knowledge about clozapine are, therefore, more properly taken up as impeachment material and go to the scope or inherent weakness in his opinion.

The second ground that the pharmacy bases its challenge is the methodology of differential diagnosis. As a methodology differential diagnosis is less a scientific process and more a scientific process of elimination, that is reasoning rather than experimentation. E. Imwinkelried, the Admissibility and Legal Sufficiency of Testimony about Differential Diagnosis (Etiology): of Under—and Over— Estimations, 56 Baylor L. Rev. 391, 401–02 (2004). Regardless, it is a generally accepted form of scientific reason that a number of courts have accepted to prove causation. See, e.g., Heller v. Shaw Indus., Inc., 167 F.3d 146, 154–55 (3d Cir. 1999); Westberry v. Gislaved Gummi AB, 178 F.3d 257, 262–66 (4th Cir. 1999); Baker v. Dalkon Shield Claimants Trust, 156 F.3d 248, 252-53 (1st Cir. 1998); Zuchowicz, 140 F.3d at 385–387; Ambrosini v. Labarraque, 101 F.3d 129, 140–41 (D.C. Cir. 1996). Furthermore, Conger's analysis deals with the specific causation of Free's collapse, as opposed to the general concept of whether clozapine can cause a collapse; thus shortening the inferential leaps required to substantiate his conclusions. Cf. Hall v. Baxter Health Care, 947 F. Supp. 1387, 1413, 1414 (D. Or. 1996) (rejecting differential diagnosis linking illness to breast implant because the analysis requires assumptions about general causation that were not established). It is, therefore, reasonable to accept Dr. Conger's testimony under V.R.E. 702 as an accepted methodology of scientific reasoning. This is not to say that Conger's opinion is unimpeachable or conclusive to the issue of causation,

but rather it is an acceptance of differential analysis as a form of reasoning that will help the jury sort through the evidence, assess the factual issue, and gives support to Parah's theory of causation.

Finally, this second argument carries an implicit challenge as to whether Conger performed his differential analysis properly. As Professor Imwinkelried notes, the issue of admissibility for differential analysis is not merely a scrutiny of "the affirmative reasons for selecting a cause" but also of "the negative reasons for rejecting alternative causes." Imwinkelried, supra, at 419. Conger's analysis in this case is carried through his depositions and demonstrates that he considered Free's medical history, use of other pharmaceuticals, and physical symptoms. Thus his conclusions are supported by medical reasoning. See Smith v. Wyeth-Ayerst Labs. Co., 278 F. Supp. 2d 684, 692 (W.D.N.C. 2003) ("[D]ifferential diagnosis doesn't require plaintiff to rule out every other cause, only to offer an explanation and take account of the other potential causes.").

The third and last contention raised against Conger's testimony is that it was prepared exclusively for trial and therefore lacks credibility. This argument is about the weight of the testimony. Certainly bias, motivation, and purpose behind individual testimony will impeach or discredit certain witnesses, but it does not undermine, for the purposes of Rule 702, a hired expert. The court would not expert Parah to put on an expert witness that was hostile to her case, but this observation does not mean that she "shopped" for an expert or coerced this expert into giving certain testimony.

Based on the foregoing, defendant's motion in limine is denied.

Dated at Burlington, Vermont_____, 2004.



Judge