*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-126

DECEMBER TERM, 2012

| | |
|---|---|
| Todd Swim a/k/a Todd C. Swim | APPEALED FROM: |
| v. | Superior Court, Windham Unit, Family Division |
| Margaret (Swim) O'Neill | DOCKET NO. 267-9-09 Wmdm |

Trial Judge: John P. Wesley

In the above-entitled cause, the Clerk will enter:

Mother appeals a final divorce order entered by the superior court, family division. She argues that the court erred in excluding evidence of domestic abuse and awarding father sole legal, and primary physical, rights and responsibilities with respect to the parties' three children. We affirm.

The parties were married in August 2003 and separated in July 2009. Their oldest child was born in June 2004 and their younger twins were born in June 2006. Before the parties' separation, mother was the primary care provider for the children.

In August 2009, mother sought a relief-from-abuse (RFA) order against father. The court denied ex parte relief, noting that mother's affidavit described an incident of abuse from December 2008 but no later than that and thus did not support a finding of an immediate danger of further abuse warranting emergency, ex parte relief. In September 2009, mother sought an ex parte RFA order on behalf of one of the parties' twin sons, alleging that during a domestic argument father dropped the boy and dragged him across the floor. The court granted a temporary RFA order, assigned parental rights and responsibilities to mother, and allowed father only one hour per week of supervised parent-child contact. On September 19, 2009, shortly after mother filed her second RFA petition, father filed a complaint for divorce.

On December 4, 2009, after considering evidence in the RFA action on two separate days, the family court declined to issue a final RFA order and dismissed the RFA petition because it was unable to find a risk of abuse. At the same time, in connection with the divorce action, the court issued a temporary order assigning physical and legal rights and responsibilities to mother and unsupervised parent-child contact on alternating weekends and one evening mid-week to father.

On Christmas Day 2009, less than three weeks after mother's second RFA complaint was dismissed, father's sister came to mother's home to pick up the children for a visit with their father. Mother was not around, and the house was in disarray. Father's sister took the children, and father asked the police to do a welfare check. Mother did not answer the door, and police ultimately found her in her bed; they had difficulty rousing mother, who appeared disoriented

and was unaware that her children had been gone for over an hour. In response to a petition for a finding that the children were in need of care or supervision (CHINS) filed by the Department for Children and Families (DCF), the family court issued an emergency care order placing the parties' children in DCF custody. Mother eventually stipulated to a CHINS finding. Pending a disposition hearing, the temporary care order continued DCF custody of the children, but placed them with their parents as provided in the then-current temporary order in the divorce case.

The juvenile disposition hearing and contested divorce actions were set together for a two-day hearing in July 2010. Following two days of hearing in the divorce action, the family court issued a "Stipulated Temporary Parental Rights and Responsibilities Order" signed by the parties, their attorneys, and the children's attorney. The temporary order assigned mother sole legal parental rights and responsibilities and provided that the parties would share physical rights and responsibilities as detailed in the parent-child contact schedule. The parties also agreed to submit to the parent coordination process and asked the court to assign a parent coordinator to make recommendations about the parent-child contact schedule as set forth in the stipulation. DCF returned custody of the children to mother and closed its CHINS case.

The parent-child coordinator filed a report and recommendations in December 2010. Based on those recommendations, in January 2011 the parties stipulated to a further amended temporary order regarding parental rights and responsibilities.

At a May 2011 status conference, father indicated his support for incorporating the January 2011 stipulated order into the divorce decree as the final order on parental rights and responsibilities. The children's guardian ad litem (GAL) and attorney supported the proposal, but mother opposed the plan, and the court set the case for a contested final evidentiary hearing. Mother's attorney withdrew in July 2012 and mother represented herself in the final divorce hearing, which was held over two days in February 2012.

On March 2, 2012, the family court issued a final divorce order in which, among other things, it awarded father legal and physical rights and responsibilities for the children. The court awarded mother parent-child contact as set forth in the January 2011 stipulated order, with a relatively minor change in a mid-week pickup by father. In transferring legal rights and responsibilities to father, the court concluded that father was more committed to a course best suited to the continuation of the children's healthy development. The court noted mother's unwavering conviction that father is an alcoholic with an abusive personality prone to domestic violence. The court found, however, that notwithstanding mother's repeated castigations against father's character, the credible evidence did not support any persistent pattern of domestic violence on father's part.

The court further noted mother's expectation that she would move to Massachusetts with a man with whom she had commenced a serious relationship and her belief, despite the evidence to the contrary, that the stipulated parent-child contact order was not good for the children. In contrast, the court recognized father's continued support for the ongoing parenting plan and his constant efforts to make that plan work. In the court's view, the stabilizing effect of the plan had served the children well under stressful circumstances and thus continuation of the plan was essential to the children's best interests. The court concluded that if mother were to relocate with the children, it would not be in their best interests, given the distance it would take the children from father, his extended family, and their broader social network. The court also concluded that father was more disposed to foster a positive relationship with the other parent and that mother had made questionable judgments regarding dental and mental health issues concerning the children. The court emphasized, however, that the principal basis for its transferring legal

2

custody to father was the desire to maintain a parent-child contact schedule that had served the children well and was supported by father.

On appeal, mother challenges the court's order regarding parental rights and responsibilities and raises a host of issues about the process surrounding the final hearing and the substance of the trial court's opinion.

## I.

Mother first argues that because she had already been awarded parental rights and responsibilities following the December 4, 2009 final RFA hearing, the family court had no basis for holding another hearing regarding parental rights and responsibilities—a hearing that clearly was not and could not have been a modification hearing—in the spring of 2012. We find no merit to this argument. Following the December 4, 2009 RFA hearing, the family court dismissed mother's RFA petition. At the same time, in the then-pending divorce action, the family court issued a "Temporary Order Regarding Parental Rights and Responsibilities and Parent-Child Contact." In that order, the court awarded "temporary primary legal and physical rights and responsibilities" to mother, subject to father's parent-child contact. In July 2010 and again in January 2011, pursuant to the parties' stipulations in both instances, the court issued new, revised temporary orders regarding parental rights and responsibilities; these orders were specifically captioned as temporary orders.

Temporary orders regarding parental rights and responsibilities are just that, temporary orders pending a final hearing. See V.R.F.P. 4(c)(1); 15 V.S.A. § 594a; see also Thompson v. Pafundi, 2010 VT 80, ¶ 17, 188 Vt. 605 (mem.) (citing another case for proposition that "the temporary order in place up until then was just that: temporary" in rejecting mother's argument that family court erred by not addressing whether there had been change of circumstances before considering child's best interests). In the absence of a stipulation of the parties regarding parental rights and responsibilities, the court properly did what the rules contemplate—it held a final hearing and issued a final order regarding parental rights and responsibilities.

## II.

Mother next challenges various evidentiary rulings regarding witnesses mother sought to call at the final hearing. Mother does not specify which of the various witnesses, who were the subject of a motion in limine and motions to quash below, are the subject of her challenge on appeal. We infer that her argument is directed primarily at the proffered testimony of a psychologist who had apparently administered a psychological forensic evaluation of mother approximately eighteen months earlier.

In January 2010, father served his first set of discovery requests on mother's attorney. Among other things, father requested disclosure of experts and any expert reports. Mother responded by stating that no experts had been hired yet, but that she was contemplating hiring an expert to evaluate father's business interests. She indicated that she would supplement her response as appropriate. Nearly two years later, by the time of the family court's January 4, 2012 pretrial status conference, mother had not disclosed any expert. The court's pretrial order required each party to provide a list of witnesses no later than January 20, 2012. The evening of January 22, 2012, mother e-mailed father's attorney with a list of fifteen witnesses, including some expert witnesses, whom she expected to testify on her behalf at the trial scheduled for February 6-7.

3

At the beginning of the first day of the final divorce hearing, the family court addressed those motions. The first witness listed by mother was a clinical psychologist who reportedly had administered a forensic psychological evaluation of mother a year and a half earlier. Mother proffered that the psychologist would verify the domestic violence perpetrated by father upon her, explain how traumatic the abuse had been for her and the children, and explain to the court that domestic violence is evident from his evaluation. Father objected that the psychologist had not been timely or properly disclosed, that mother had failed to establish that the expert's opinion would comply with the standard for expert opinions set forth in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and adopted by this Court in State v. Brooks, 162 Vt. 26 (1993), that father had never seen the psychological evaluation or any other report prepared by the psychologist, and that he had never been given an opportunity to depose the expert. Father stated that if mother were going to be allowed to present expert testimony concerning her mental condition, he would be entitled to all of the files of various mental health providers, which would be a substantial undertaking that would delay the onset of the trial.

The court granted the motion in limine with respect to the psychologist. The court expressed some doubt that psychological tests such as the one administered by mother's expert could be sufficiently validated to be admitted as evidence that mother was the victim of domestic violence in this case. But the court emphasized that it was granting father's motion because mother had failed to timely disclose the expert to the prejudice of father, who had a right to depose the expert in advance of trial and obtain his own experts if necessary.

We find no abuse of discretion in the court's decision to exclude the expert witness. See Hutchins v. Fletcher Allen Health Care, Inc., 172 Vt. 580, 581 (2001) (mem.) ("On appeal from an order excluding an expert witness from testifying, the appellant must show an abuse of discretion."). Under Vermont Rule of Civil Procedure 26(b)(4)(A)(i) and (ii), parties are required to respond to discovery requests concerning the identity of experts and the substance of their testimony to allow the opposing side an opportunity to depose the experts. White Current Corp. v. Vt. Elec. Coop., 158 Vt. 216, 222-23 (1992). "[T]he trial court has inherent authority to enforce [Rule 26] by excluding evidence, granting a continuance, or taking other appropriate action." Id. at 223. Here, considering the already extensive delay in resolving the issue of parental rights and responsibilities in this case, the necessary further delay that would ensue from allowing the testimony, the uncertainty over the admissibility of the proffered testimony, and mother's failure to adequately explain the reason for the late disclosures, we cannot say that, in excluding the proffered expert testimony, the "court's discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable." Id. (quotation omitted).

Mother also sought to present the testimony of various counselors or service providers who were connected to the family and prior court proceedings. The court excluded the testimony of mother's therapist, whom mother wanted to call to share her thoughts on the bias of the children's GAL. The court stated that the case was not about the GAL's alleged bias and that, in any event, the witness was untimely disclosed. The court also excluded the testimony of a DCF employee on a similar basis, ruling that any opinion she had about the bias of the children's GAL was irrelevant. To the extent mother proffered the DCF employee as a witness who could support her claims of domestic violence, mother acknowledged that the DCF employee had never witnessed any domestic abuse on the part of father. Mother does not identify these specific rulings in her brief, but we conclude in any event that the court did not abuse its discretion in excluding the testimony. See Davis v. Hunt, 167 Vt. 263, 268 (1997) (acknowledging that family court has discretion to exclude irrelevant, cumulative, or unduly prejudicial testimony).

4

Mother also sought to present the testimony of two other counselors to explain how the oldest child was concerned about father drinking and driving. The trial court reserved judgment on the admission of this testimony, telling mother that if she reached a point during the trial when she believed, based on the testimony of other witnesses, that she could show that the otherwise privileged proffered testimony of the counselors could be admitted to address a potential risk of harm to the children, she could renew her request to admit the testimony. Mother never made another offer of proof or argument to admit the proffered testimony. Nor did mother renew her request to admit the otherwise privileged proffered testimony of a service provider who had filed a report on the family earlier, even though the court had explicitly reserved judgment on admitting that testimony and had given mother an opportunity to renew the request.

Again, mother does not specify these rulings in her more general argument on appeal. We conclude in any event that the court did not err in reserving judgment with respect to these witnesses. Rule 503 of the Vermont Rules of Evidence expressly provides that defined physician-patient communications are privileged and, thus, not admissible unless an exception to the privilege applies. Rule 503(d)(7) creates an exception to the privilege in proceedings to determine parental rights and responsibilities or parent-child contact if the court, after hearing, finds on the basis of evidence other than the potentially privileged evidence that: (1) "lack of disclosure of the communication would pose a risk of harm to the child as defined in 33 V.S.A. § 4012 . . . ; (2) the probative value of the communication outweighs the potential harm to the patient; and (3) the evidence sought is not reasonably available by any other means." The court properly invoked this rule and offered mother the opportunity to make the necessary showing. She did not follow up.

Finally, the court excluded the testimony of father's sister, which mother sought to admit for the purpose of showing that the sister's husband—father's brother—had broken the sister's arm during a domestic dispute. Mother argued that father's brother's prior conduct was probative with respect to his own tendency to engage in domestic violence. The court rejected mother's proffer that it was relevant because domestic violence runs in families. See Davis, 167 Vt. at 268.

III.

Mother also argues that the family court erred by granting father sole legal and primary physical rights and responsibilities. We have already rejected her "jurisdictional" argument. As for the merits of the court's ruling, she argues that she is the primary care provider and did nothing wrong to lose that status, that father is an abusive alcoholic, and that she never intended to relocate to Massachusetts without the children. We first note that the court's detailed decision touched upon each of the statutory criteria set forth in 15 V.S.A. § 665. As indicated above, the court assigned legal and physical rights and responsibilities to father because, among other things: (1) he was more likely to preserve an essentially shared custody arrangement that had worked well for the children; (2) he was more inclined to foster a positive relationship with the other parent; and (3) mother had shown questionable judgment with respect to dental and mental health issues concerning the children. The court has broad discretion in determining custody and "[w]e will not disturb the court's custody award if it reflects reasoned judgment in light of the record evidence." Hazlett v. Toomin, 2011 VT 73, ¶ 11, 190 Vt. 563 (mem.) (quotation omitted). That is the situation here. The record supports the court's carefully considered decision.

As far as the statements mother makes in her brief, the court recognized that she was the children's primary care provider before the parties separated, but found that the parties had essentially shared physical parental rights and responsibilities for the eighteen months immediately prior to the final divorce hearing and that father had been essentially a co-parent during that period in virtually all aspects of the children's care. Cf. Porcaro v. Drop, 175 Vt. 13, 17 (2002) ("[T]he record evidence of father's substantial involvement in all aspects of the child's life, and the mutual devotion of father and child, demonstrates that no additional weight [for primary care provider status] was required in this case."). We find no abuse of discretion in the court's decision not to apply mother's primary caregiver status during the marriage so as to override other factors favoring father in its custody determination. See Payrits v. Payrits, 171 Vt. 50, 54 (2000) ("[W]hile a primary care provider finding is entitled to great weight, we have continually declined to adopt a rule that the primary custodian will be awarded custody as long as the parent is fit." (quotation omitted)).

Regarding mother's allegations regarding father's abusive behavior, the court examined this question carefully, and while recognizing incidents in which father's behavior was inappropriate and on one occasion resulted in a disorderly conduct charge, it rejected mother's claim that those incidents were representative of father's general character or treatment of the children. In making this determination, the court relied upon not only the testimony of the parties, but also the testimony of multiple witnesses who had interacted with the family over the years. See id. (stating that when trial court makes findings in area where there is conflicting evidence, we have "consistently held that . . . the credibility of the witnesses, the weight of the evidence, and its persuasive effect are questions for the trier of fact, and its determination must stand if supported by credible evidence").

Regarding mother's expectation that she would move to Massachusetts, as the court pointed out, this is a case in which mother's interest in relocating with the children arose in the context of the initial divorce proceeding before permanent parental rights and responsibilities had been established rather than in the context of a modification proceeding. The court did not assume that mother would move to Massachusetts even if it meant she would not be awarded primary custody of the children, as she suggests. In fact, the court left in place a schedule of parent-child contact that assumed that mother did not move, and acknowledged that if she did actually relocate, that would be treated as an unanticipated change in circumstances.

The court did consider the possibility of mother's relocation and clearly determined that the children's best interests would be served by continuing with the same shared custody arrangement that had served them well thus far, and by remaining in the same community surrounded by a supportive extended family. The court concluded that father was supportive of this arrangement and that mother was not because of her ongoing belief that father had an abusive nature and that the children were not doing well in their current circumstances, notwithstanding the court's findings to the contrary. There was no misunderstanding by the court on the question of relocation.

Finally, mother suggests throughout her brief that the trial court, the children's attorney, the children's GAL, and others were biased against her or in favor of father in this case. There is nothing in the record to support these accusations. Indeed, the record demonstrates that the court was solicitous in assuring that mother understood its procedures and rulings throughout the trial. Mother's claims of bias appear to be based on nothing more than her unhappiness with the results of these "extremely contentious and very heavily litigated" proceedings, as described by the trial court. See Ball v. Melsur Corp., 161 Vt. 35, 45 (1993) (stating that judicial "bias or

prejudice must be clearly established by the record" and "that contrary rulings alone, no matter how numerous or erroneous, do not suffice to show prejudice or bias").[*]

     <u>Affirmed</u>.


BY THE COURT:


_____

Paul L. Reiber, Chief Justice


_____

John A. Dooley, Associate Justice


_____

Beth Robinson, Associate Justice

---

[*] Father has moved to strike transcripts of RFA hearings attached to mother's reply brief, arguing that they are irrelevant and not part of the record below. Because we affirm the trial court's decision, and have not in any event relied on the transcripts for anything beyond general background history, we treat father's motion as moot. On the day of oral argument, mother filed an "Emergency Motion to Consider Critical Evidence of Perjury," to which she attached various documents. Even if we were to consider these documents, we find nothing in the submission that changes our analysis. Mother is essentially arguing that the documents show that the trial court was wrong in two of its factual findings. We do not second-guess the trial court's findings of fact if they were based on evidence in the record—even if there was other evidence pointing the other way.